## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EDWARD E. KILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04-3165 |
| | ) | |
| TIMOTHY MARTIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Plaintiff Edward Killman's Motion for Summary Judgment (d/e 26), Defendants Timothy Martin, Robert Millette, Brian Piersma and James Reinhart's Motion for Summary Judgment (d/e 28), and the Defendants' Motion to Strike Plaintiff's Exhibits "C" and "D" Attached to Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment (d/e 31).   In April 1998, the Illinois Department of Transportation (Department) hired Killman.  Killman was an active member of the Republican Party.  Killman was hired as a Local Agency Liaison (Position) for District 9 of the Department.  The Position's official job description states that the Position performs confidential duties

for which political affiliation is an appropriate employment consideration. Killman, however, never performed any of the duties of the Position. Rather, he was assigned to work as the building and grounds manager for the Department's District 9 headquarters. After the Democrats won the Governor's office in 2003, the Defendants fired Killman. Killman now claims he was fired because of his political affiliation in violation of his First Amendment rights. He also claims that he was denied his property interest in his job without due process. The Defendants argue that the Position was one for which political affiliation is an appropriate consideration. The Defendants also argue that Killman was an at-will employee who had no property interest in his job. The Court agrees with the Defendants. The Motion for Summary Judgment is therefore allowed.

The Defendants also ask the Court to strike the Affidavits of Steve Babb and Donald Lingle attached to Killman's Memorandum of Law In Support of his Motion for Summary Judgment. The Defendants argue that the Affidavits are contradicted by Babb and Lingle's deposition testimony. The Defendants also argue portions of the Affidavits are not based on personal knowledge. The Motion to Strike is allowed in part. The Court will disregard any portions of the two Affidavits that are not based on

personal knowledge or that contradict the deposition testimony of the affiant. Fed. R. Civ. P. 56(e); F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 634 (7th Cir. 2005).[1]   The Court will now address the cross-motions for summary judgment.

## STATEMENT OF FACTS

Killman has been a registered Republican all of his adult life.  He is a Republican precinct committeeman and has been a Republican Party Chairman for Williamson County, Illinois.  Killman worked on a contract basis for the state of Illinois from 1994 to 1997.  In 1997, Killman met with Mike McCormick, an advisor to then Republican Governor Jim Edgar. McCormick assisted Killman in getting another six-month employment contract with a state agency.  In March 1998, Killman's contract was about to expire.  Killman contacted McCormick again.  McCormick told Killman to report for work at the Department's District 9 Office on April 1, 1998. Killman was then hired into the Position.  The hiring decision for the Position came from the Governor's Office.  Memorandum of Law in Support of Defendants' Motion for Summary Judgment (d/e 29)

---

[1]Killman also challenges Defendants' Exhibits 10, 18, 22 and 23.  Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (d/e 37) at 1-2. The Court will not consider these exhibits.

(Defendant's Memorandum), Exhibit 4, Deposition of Brian Piersma at 17-18, 150-51.[2]

The Position is classified as a Technical Advisor IV within the Department. Killman understood that he was being hired in a Technical Advisor IV position. His monthly salary was $2,810.00. Defendant's Memorandum, Exhibit 1, Deposition of Edward Killman at 73, and Exhibit 6, Personnel File of Edward Killman (Personnel File) at 14. All technical positions were exempt from compliance with the Illinois Personnel Code. Defendants' Memorandum, Exhibit 20, Personnel Policies Manual (Manual) at 2; 20 ILCS 415/4c(12).

The Position was also listed as "Rutan exempt" by the Department. The phrase "Rutan exempt" refers to the Supreme Court decision that held that, except in limited situations, a state could not consider political affiliation in hiring. Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). Pursuant to the Rutan decision, the state of Illinois began designating the limited types of jobs for which political affiliation was an appropriate consideration as "Rutan exempt." The Position was so

---

[2] Piersma was deposed twice, on April 22, 2004, and January 27, 2006. The transcript of the April 22, 2204, deposition is attached to Defendants' Memorandum as Exhibit 3, and the January 27, 2006, transcript is attached as Exhibit 4.

designated.  Thus, the Position was both <u>Rutan</u> exempt and exempt from the civil service restrictions and protections in the Personnel Code.  As discussed later, such positions were referred to as "double exempt."

The official job description for the Position stated, in part:

> The environment of this position is characterized by extreme political sensitivity which complicates the task of developing and maintaining consistent and cooperative relations with local agencies.  This position must continually be aware of the sensitive relationship between the district in the remainder of the state.

> The greatest challenge of this position is to provide timely assistance to local agencies in obtaining MFT funds for their use. Typical problems include maintaining status of transportation projects to keep the general public and state legislators apprised of progress.

> This position personally serves as district spokesperson on the issue of allocation of Motor Fuel Tax (MFT) funds.  The incumbent develops and maintains liaison functions with local agencies and municipalities to assist in understanding and maximizing additional funds as they become available as well as the development of transportation projects.  S/He serves as liaison with county board members seeking information and assistance on the funding situation for their area, informs state legislators of the status of transportation projects in their areas, and performs other duties as assigned by the District Engineer.

> Under general supervision, the incumbent has latitude to accomplish responsibilities of the position.  Matters of a unique nature are referred to the supervisor with recommendations for solution.  This position is constrained by departmental rules and regulations.

Internal contact includes the Executive Office and Bureau of Local Roads and Streets personnel.  External contacts include the mayors, regional planning commissions, local agencies, state legislators and the general public to ensure effective coordination and monitoring of transportation programs and projects.

The effectiveness of this position is measured by the degree to which harmonious relationships between the state and local agencies are achieved and the degree to which limited available resources address the wide array of needs in District Nine.

Defendants' Memorandum, Exhibit 7, Job Description for Local Agency Liaison.

The Department also has a Personnel Policy Manual (Manual).

Defendants' Memorandum, Exhibit 20, Manual.  The Foreword to the Manual stated, in part:

This manual is provided to better acquaint you with the personnel policies of the Illinois Department of Transportation and does not constitute a contract of employment in whole or in part.  The Department reserves the right to add, amend or delete any benefit or policy stated herein at any time, except as otherwise committed by collective bargaining agreements and the Department of Central Management Services' Personnel Rules.

Manual at iv.

Killman reported for work at District 9 headquarters April 1, 1998.

Defendants' Memorandum, Exhibit 2, Deposition Steven Babb at 26.

District 9 officials assigned individuals who held the Position to perform
other work.   Steven Babb, the District 9 Administrative Manager and
Bureau Chief of Administrative Services, identified four individuals that
were hired for the Position:

> "[W]e have had, uh, two other individuals hired in a similar
> fashion as Mr. Killman.  That was Chris Grissom, who was the
> Republican County Chairman of Jackson County, and he was
> hired with this position description.  He did not perform any of
> these functions.  The other individual was a Mike McCormick,
> who was the former State's Attorney of Johnson County . . . and
> also the former Republican County Chairman from Johnson
> County.  He was also hired underneath this job description, and
> he never performed any of these functions, either.  In each of
> those cases, whether it be Mr. Grissom, Mr. McCormick, or in
> the case of Mr. Killman, District 9 reviewed their background,
> knowledge, and experience, and assigned them to real
> meaningful jobs that needed to be performed within the district.

Babb Deposition at 13.  The fourth person hired for the Position was the
grandson of a Democratic state senator.   Id. at 15-16.   Each of the
individuals in the Position at District 9, including Killman, did not perform
the work described in the Position's job description.   Rather, each was
assigned to some other task based on his individual background and
experience.  The Department's head of personnel, Bill Pearman, told Steve
Babb, that he did not care what work Killman actually performed.   Babb
recommended to Karl Bartelsmeyer, the District Engineer for District 9, that

Killman be assigned to work as the manager of buildings and grounds at the District 9 headquarters. Bartelsmeyer approved the recommendation.

While working as the manager of buildings and grounds, Killman reported to David Barringer, the Manager of Business Services at District 9. Barringer reported to Babb. Killman did not perform any of the functions set forth in the official job description for the Position. Babb Deposition at 28. According to Babb, Killman would have been disciplined if he tried to perform any of the functions set forth in the job description of the Position. Id. at 12. The District had other employees who were more knowledgeable who could deal with issues such as motor fuel taxes. Id. at 39.

The Department never changed Killman's official appointment. He remained in the Position during his entire tenure at the Department. See Personnel File. On November 15, 2002, the Position was reclassified as a Technical Manger III instead of a Technical Advisor IV, but the stated duties did not change. Id. at 5; Piersma Deposition, Exhibit 4 at 128, 133-34. In 2002, Babb had a new job description drafted for Killman as the Buildings and Grounds Manager, but the new job description never was approved by the Department, and Killman was never transferred to a different job title. Babb Deposition at 18-20; Personnel File.

Rod Blagojevich, a Democrat, became Governor of Illinois in 2003. Defendant Timothy Martin then became Director of the Department. Defendant Robert Millette was Deputy Director of the Department. Defendant James Reinhart was also a Deputy Director for three months in 2003.   Defendant Brian Piersma was the Acting Bureau Chief of the Department's Bureau of Personnel Management.   After Martin became Director, he asked for a list of every employee who was in a double exempt position (i.e., both Rutan exempt and exempt from the Personnel Code). Killman was on the list.  Martin and the other Defendants then terminated all Department employees who held a double exempt liaison position, including Killman.  Piersma Deposition, Exhibit 3 at 19-20.  On April 25, 2003, Martin sent Killman a letter notifying him that he was fired.  The body of the letter stated:

> Our records indicate that you are currently employed with the Illinois Department of Transportation as a Technical Manager III in a double exempt status, position number PW413-23-59-000-00-01.  Therefore, please consider this letter as notice of your termination, effective at the end of business today.  You will receive two weeks severance pay.
>
> The necessary state forms will follow shortly.
>
> Thank you for your service to the state of Illinois.

Personnel File at 3, <u>Letter dated April 25, 2003</u>.

Killman then brought this action.  He claims that he was fired illegally because of his political affiliation and that he was denied his property interest in his job without due process.

ANALYSIS

Both parties move for summary judgment.  To prevail, the moving party must present evidence that demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the non-moving party.  Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Once the moving party has met its burden, the non-moving party must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

A.    <u>FIRST AMENDMENT</u>

In most cases, state officials cannot fire a state employee because of

the employee's political affiliation; such firings violate the employee's First Amendment rights.  Branti v. Finkel, 445 U.S. 507, 517 (1980); Elrod v. Burns, 427 U.S. 347, 359-60 (1976).  Some state employees, however, "are in close contact with policymakers and the highly confidential communications or records affecting decisions."  Meeks v. Grimes, 779 F.2d 417, 420 (7th Cir. 1985).  The political loyalty of such employees is a proper employment consideration.  The voters chose the elected officials, and those officials are entitled to pursue the goals and policies on which they were elected.  These elected officials must have the loyalty of state employees who have access to confidential information and who speak on behalf of the elected officials to effectuate those goals and policies.  Political rivals with access to confidential information, or with the authority to represent the elected officials to the public, would have incentives to frustrate or even sabotage effective government in order to promote the political goals of the opposition.  Elrod, 427 U.S. at 367.  Elected officials, therefore, may use political affiliation as employment criterion for positions with access to confidential information.  Id.

The question of whether a position is "confidential," for which political affiliation is an appropriate employment consideration, is

determined by the duties and responsibilities inherent in the position itself, rather than the specific duties that the particular employee performed in the position. <u>Americanos v. Carter</u>, 74 F.3d 138, 141 (7th Cir. 1996); <u>Tomczak v. City of Chicago</u>, 765 F.2d 633, 640-41 (7th Cir. 1985).

The inherent duties are generally determined in Illinois by the official job description. <u>Riley v. Blagojevich</u>, 425 F.3d 357, 361 (7th Cir. 2005). The <u>Riley</u> Court analyzed the Seventh Circuit precedent in this area in detail. <u>Id.</u> at 359-61. The Court stated: "These cases . . . refer to the importance of providing guidance to litigants." <u>Id.</u> at 361. The Court then analyzed the state of Illinois' process of checks and balances designed to create and maintain accurate job descriptions. The Court concluded:

> With these checks and balances designed to make the official job description accurate, the state is entitled to rely on it to reveal the scope of the job holder's duties and enable the court to determine whether the duties bring the job into the circle within which elected officials are entitled to demand political loyalty.

<u>Id.</u> at 362.

The <u>Riley</u> Court further stated that such a job description was a "provisional safe harbor" for state officials. <u>Id.</u> at 365. State officials, such as the Defendants, are entitled to rely on Illinois state job descriptions

12

unless evidence indicates that the checks and balances in the process for promulgating and revising the job description were somehow compromised. Id.  The Court will only look past the job description if the plaintiff presents evidence of some systematic unreliability in the promulgation or revision of the job description.  Allen v. Martin, __F.3d__, 2006 WL 2409142 at *4 (7th Cir. 2006).

Here, the prior Republican administrations promulgated the Position's job description to include Rutan exempt, confidential duties.  The Office of Republican Governor Jim Edgar relied on the confidential nature of the Position to designate the Position as Rutan exempt and to place Killman in the Position without requiring him to go through a competitive hiring process.  The Democratic administration in 2003 did not change the job description to fire Killman or others in the Position.  See Riley, 425 F.3d at 362 ("[W]e are again given no suggestion that Blagojevich or any other political official has been tinkering with . . . the job descriptions.").  See also Pierson v. Blagojevich, 437 F.3d 587, 588 (7th Cir. 2006).  The Position's job description, therefore, sets forth the duties inherent in the Position.  It is true that supervisors in District 9 decided that holders of the Position, such as Killman, should perform other duties, but that discretionary

decision by those supervisors did not change the duties inherent in the Position.

The job description for the Position stated that Killman was in a politically sensitive position with the authority to represent the Department before elected and appointed officials, and also the public. The Department's executives, such as the Defendants, must be able to rely on these official job descriptions for making employment decisions. Riley, 425 F.3d at 365. The Defendants must also be able to rely on the political loyalty of a person, such as the holder of the Position, who is authorized to speak on behalf of the Department to elected officials and the public, and to maintain relationships with the public. See Brown v. Trench, 787 F.2d 167, 170 (3d Cir. 1986); Berry v. Illinois Department of Transportation, 333 F.Supp.2d 751, 758-59 (C.D. Ill. 2004). Killman was in a confidential position for First Amendment purposes. The Defendants, therefore, could properly use his political affiliation as a basis for the decision to fire him. His First Amendment rights were not violated.

Killman argues that he was the manager of buildings and grounds at the Department's District 9 headquarters, nothing more. The Department's head of personnel, Bill Pearman, told Babb in 1998 that he did not care

what work Killman performed at District 9.  Babb and Bartelsmeyer decided

that Killman would work as the manager of buildings and grounds.  Babb

would have subjected Killman to discipline if he had attempted to exercise

the authority of the Position.  Thus, no matter what the job description for

the Position said, Killman argues that he did not have the authority to

perform the confidential duties of the Position.

Killman's argument is not persuasive.  The specific tasks that Killman

performed are not controlling.[3]   The duties inherent in the Position

determine whether political affiliations are a proper consideration for his

employment.  <u>Americanos</u>, 74 F.3d at 141; <u>Tomczak</u>, 765 F.2d at 640-41.

Killman officially always held the Position.  Babb started the process to

change Killman's job description, but never completed the change.  Killman

never was transferred out of the Position to a buildings and grounds

manager position.  Thus, he remained in the Position, and so, the inherent

---

[3]Killman also submits three documents generated by District 9 officials that refer to Killman as the manager of buildings and grounds.  <u>Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (d/e 37)</u>, Exhibits A, B, and C. These documents only establish how District 9 personnel treated Killman.  The documents do not contradict the Department's official personnel records that show that Killman held the Position.

duties of his job did not change.[4]

Defendants Martin, Millette, Piersma, and Reinhart properly relied on the official job description for the Position when deciding to fire Killman. That job description showed that Killman held a confidential position for which his political affiliation was an appropriate employment consideration. There is no evidence that any of these men knew that Killman did not perform the duties of the Position or that the job description for the Position was inaccurate. There is further no evidence that there were any irregularities in the process of promulgating the official job description for the Position. The job description for the Position, therefore, was a safe harbor for the Defendants. Riley, 425 F.3d at 365. They could rely on the description in making the decision. Hence, the Defendants did not violate Killman's rights by firing him based on his political affiliation.[5]

_____

[4]The Court notes that Killman also received all the benefits of holding a political position. He was exempt from any competitive hiring process, and he apparently always received the salary for the Position even if he never performed the work for which he was paid.

[5]The Court does not reach the issue of qualified immunity since no constitutional violation was established. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, however, the job description for the Position was not a safe harbor under Riley, then the Defendants would be entitled to qualified immunity. Killman has cited no case which has held that an official was liable for terminating an employee for political reasons when the official relied on a facially valid job description that showed that political affiliation was a proper employment consideration for the job in question and when the official had no knowledge that the employee was not performing the job for which he was being paid.

B.    <u>DUE PROCESS</u>

Killman also argues that the Defendants denied him his property interest in his employment without due process.  To prevail, Killman must show that he had a property interest in the Position and that the Defendants denied him that property interest without due process. <u>Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1</u>, 143 F.3d 351,358 (7th Cir. 1998).  To create a property interest, the employee must have a legitimate claim of entitlement to employment, not just a hopeful expectation.  <u>Crim v. Board of Educ. of Cairo School Dist. No. 1</u>,147 F.3d 535, 545 (7th Cir. 1998).  Such a claim of entitlement to employment may arise from many sources, including a state contract.  Killman argues that the Manual created an enforceable employment contract between the Department and him, and so gave him a property interest in the Position.

In this case, the Manual contained the express disclaimer, quoted above, that the Manual did not create an enforceable employment contract. This disclaimer effectively prevented the Manual from constituting an employment contract, and so, precluded Killman from forming any legitimate claim of entitlement to employment based on the Manual.  <u>See</u>

17

Berry, 333 F. Supp.2d at 757-58.

Killman relies on authority from the Illinois Appellate Court that an employment manual may create any employment contract even in the face of an expressed disclaimer if the manual elsewhere contains mandatory language.   Perman v. ArcVentures, Inc., 196 Ill.App.3d 758, 765, 554 N.E.2d 982, 988 (Ill.App. 1st Dist. 1990).   The Perman decision conflicts with other decisions of the Illinois Appellate Court.   E.g., Davis v. Times Mirror Magazines, Inc., 297 Ill.App.3d 488, 498, 697 N.E.2d 380, 388 (Ill.App. 1st Dist. 1998).   The Seventh Circuit has noted this conflict. Workman v. United Parcel Service, Inc., 234 F.3d 998, 1001 (7th Cir. 2000).   The Seventh Circuit further observed that the Illinois Supreme Court has not directly addressed the issue, but has given some indication that disclaimers in employment manuals at the time that an employee commences employment are "effective to bar the employee's claim of breach of contract."   Id.

The Seventh Circuit further criticized the Perman line of cases as "paternalistic in the extreme."   Id.   The Seventh Circuit explained:

> Employment at will is the norm in the United Sates.   An employee therefore has no reason to presume that he has tenure, and a disclaimer that a handbook creates a contract is a clear

> statement that if he is fired he can't sue for breach of contract.
> What more is needed?

Id.  Given the conflict in the decisions of Illinois Appellate Courts, the lack of Illinois Supreme Court authority, and the Seventh Circuit's criticisms of Perman, this Court declines to follow Perman.  The disclaimer in the Manual precludes any formation of an employment contract.  Workman, 234 F.3d at 1001.  Killman, therefore, had no contractual right to employment based on the Manual, and so, no property interest in his employment based on the Manual.

Killman also argues that, as the manager of buildings and grounds, he had a property interest in his position because he was protected by the civil service protections of the Illinois Personnel Code.  The Court disagrees.  As explained above, Killman was hired in the Position, which was considered a technical position that was exempt from the Personnel Code.  Allen, 206 WL 2409142 at * 7.  Killman knew at the time he was hired that he was a technical employee.  His status as a technical employee never changed.  He was exempt from the Personnel Code.  The civil service protections did not apply to him and did not give him a property interest in the Position.  Because Killman had no property interest in his employment, Defendants

could fire him at will without violating Killman's right to due process.  The Defendants are entitled to summary judgment on the due process claim.

THEREFORE, Defendants' Motion to Strike Plaintiff's Exhibit "C" and "D" Attached to Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment (d/e 31) is ALLOWED in part.  The Court will disregard any portions of the Affidavits of Steve Babb and Donald Lingle, Plaintiff's Exhibits C and D, that are not based on personal knowledge or that are contradicted by the Affiants' deposition testimony. Defendants Timothy Martin, Robert Millette, Brian Piersma and James Reinhart's Motion for Summary Judgment (d/e 28) is ALLOWED, and Plaintiff Edward Killman's Motion for Summary Judgment (d/e 26), is DENIED.  Judgment is hereby entered in favor of the Defendants Timothy Martin, Robert Millette, Brian Piersma and James Reinhart, and against the Plaintiff Edward Killman.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   August 24, 2006.

FOR THE COURT:

s/  Jeanne E. Scott

20

JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE